**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **P.F. and S.H.**

**No. 24-354** (Mineral County CC-29-2022-JA-54 and CC-29-2022-JA-55)


**MEMORANDUM DECISION**


Petitioner Mother N.M.[1] appeals the Circuit Court of Mineral County's May 24, 2024, order terminating her parental rights to P.F. and S.H., arguing that the circuit court erred in terminating her improvement period and parental rights and denying her post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In November 2022, the DHS filed a petition alleging that the petitioner was arrested after she was in a car accident while under the influence with the children in her vehicle. According to the parties, the circuit court held an adjudicatory hearing on February 13, 2023, and heard testimony from a Child Protective Services ("CPS") worker and law enforcement officer. Ultimately, the court adjudicated the petitioner "as an abusive and/or neglectful parent." Thereafter, the court held a series of hearings regarding the petitioner's motion for a post-adjudicatory improvement period, culminating in a hearing in April 2023 at which the court accepted a proposed family case plan and granted the petitioner an improvement period. The terms of the improvement period required the petitioner to, among other things, attend supervised visitation with the children, participate in parenting and adult life skills classes, submit to drug tests, and participate in substance abuse treatment.

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The petitioner's brief was filed in accordance with Rule 10(c)(10)(b) of the Rules of Appellate Procedure. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Madison B. Martin appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Over the course of her improvement period, the petitioner tested positive for multiple substances, including THC, doxepin, Xanax, and clonazepam, none of which she was prescribed. The petitioner also repeatedly tested positive for alcohol but denied any alcohol or drug use, claiming that her positive alcohol screens were the result of auto-brewery syndrome.[3] However, medical testing later indicated that the petitioner did not suffer from this condition. In November 2023, the court held a hearing to address the petitioner's motion to extend her improvement period. The court found that, although the petitioner completed substance abuse classes, she nonetheless continued to test positive on her drug screens and had been incarcerated as a result of her related criminal case. As such, the court denied the petitioner's motion. The petitioner thereafter filed a motion for a post-dispositional improvement period.

At a hearing in February 2024, the court addressed the petitioner's motion and found that she had demonstrated a substantial change in circumstances as she, among other things, tested negative for any non-prescribed substances for a sustained period of time. However, on April 5, 2024, the petitioner was arrested following a domestic violence incident with her boyfriend in their shared residence. The petitioner's probation officer filed a petition to revoke her probation as a result of this arrest and an earlier failure to report contact with law enforcement after the petitioner was stopped for a traffic violation. The guardian filed a motion to revoke the petitioner's improvement period, which the court considered at a hearing later that month. During that hearing, the petitioner minimized her conduct and testified that she believed the children would be safe living with her and her boyfriend. The court found that the petitioner's testimony was evasive, performative, demonstrated her continued refusal to accept responsibility for her actions, and generally lacked credibility. As a result of the petitioner's conduct, the court granted the guardian's motion and terminated the petitioner's improvement period.

The court held a final dispositional hearing in May 2024, during which a DHS worker testified that, despite the extensive services offered, the petitioner could not provide a safe home for the children. The worker confirmed that the petitioner, who remained incarcerated, had not participated in any services since her arrest one month prior. The worker further testified that there was no likelihood that the petitioner could remedy the conditions of abuse and neglect at issue. The petitioner testified and denied drinking alcohol during the proceedings despite multiple positive screens. Further, when confronted with her multiple incarcerations during the proceedings, the petitioner claimed, "I didn't do anything." The petitioner expressed her continued belief that the children could live with her and her boyfriend despite their history of domestic violence. The court then found that "almost through the entire" post-adjudicatory improvement period, the petitioner made "almost no effort" to comply with the case plan. However, the court noted the petitioner's attempt "at the last minute" to comply, which resulted in her post-dispositional improvement period. Regardless, the court went on to cite the petitioner's arrest for

---

[3] "Auto-brewery syndrome . . . is a condition in which ethanol is produced through endogenous fermentation by fungi or bacteria in the gastrointestinal (GI) system, oral cavity, or urinary system. Patients with auto-brewery syndrome present with many of the signs and symptoms of alcohol intoxication while denying the intake of alcohol . . . ." National Institute of Health, https://www.ncbi.nlm.nih.gov/books/NBK513346/ (last visited June 10, 2025).

domestic battery not long after being granted a second improvement period, which it found further undermined any confidence that the petitioner could sustain improvement. Accordingly, the court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was in the children's best interests. As such, the court terminated the petitioner's parental rights to the children. The court also denied the petitioner post-termination visitation with the children, finding that "[t]he pattern of the case" established that "visitations are tumultuous for them" and "throw[] them into a pattern of unsteadiness" that "causes them harm in the long run." The petitioner appeals from the dispositional order.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in terminating her improvement period. In support of this assignment of error, the petitioner takes issue with several of the court's factual findings and asserts that she was complying with the terms and conditions of her improvement period. In challenging these findings, the petitioner relies heavily on her own testimony, yet she ignores the circuit court's finding that she lacked credibility. We will not disturb this finding on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Further, the petitioner ignores the fact that she minimized her participation in domestic violence that resulted in her arrest and, in conjunction with her failure to report a prior citation, the filing of a petition to revoke her probation. According to West Virginia Code § 49-4-610(7), upon the motion of any party, "the court shall terminate any improvement period . . . when the court finds that [the parent] has failed to fully participate in the terms of the improvement period." The petitioner does not dispute that she failed to participate in certain terms, such as visitation, but argues that she was unable to participate because of her incarceration pending her probation revocation. Given the clear evidence of the petitioner's failure to participate in certain services and the fact that she engaged in conduct that resulted in the filing of a petition to revoke her probation, we conclude that the circuit court did not abuse its discretion in terminating her improvement period. *See* Syl. Pt. 2, *In re Lacey P.*, 189 W. Va. 580, 433 S.E.2d 518 (1993) ("[I]t is . . . within the court's discretion to terminate the improvement period . . . if the court is not satisfied that the [parent] is making the necessary progress.").

Next, the petitioner argues that it was error to terminate her parental rights, again taking issue with certain of the circuit court's factual findings. Critically, however, the petitioner fails to recognize that throughout the entirety of the proceedings, she repeatedly denied any substance abuse despite multiple screens that were positive for drugs and alcohol. The petitioner blamed her alcohol use on a medical condition from which she did not suffer according to the evidence. As we have stressed, "[f]ailure to acknowledge the existence of the problem . . . results in making the

---

[4] Both children's fathers retain their parental rights. The permanency plan for P.F. is to remain with her nonabusing father, while the permanency plan for S.H. is legal guardianship in her current placement with relatives.

problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Accordingly, we conclude that the circuit court did not err in finding that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."). Further, the court found that termination of the petitioner's parental rights was in the children's best interests, a finding that the petitioner does not challenge on appeal.[5] Circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 48-4-604(c)(6); Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

Finally, the petitioner argues that the circuit court erred in denying her post-termination visitation with the children. According to the petitioner, visits with the children went well and continued contact would have been in their best interests. However, this is directly contradicted by the circuit court's findings that visits with the children were tumultuous and caused the children harm. As we have explained, in order to grant post-termination visitation, "[t]he evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (quoting Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)); *see also* W. Va. R. of P. for Child Abuse & Neglect Pro. 15(b)(2)(A) (requiring that, in order to grant post-termination visitation, a circuit court must find that it is in the child's best interests). Accordingly, the circuit court did not err in denying the petitioner post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2024, order is hereby affirmed.

Affirmed.

---

[5] In fact, the petitioner ignores this finding in favor of arguing that the circuit court did not make a finding that termination of her rights was necessary for the children's welfare as required by West Virginia Code § 49-4-604(c)(6). However, this Court has upheld termination of rights where "[t]he dispositional order entered by the circuit court . . . [does] not track the language of West Virginia Code [§ 49-4-604]" when the Court was convinced, after reading the dispositional hearing transcript, that "the trial court first reached the conclusions required by [West Virginia Code § 49-4-604(c)(6)] before terminating" the rights. *In re Jamie Nicole H.*, 205 W. Va. 176, 184, 517 S.E.2d 41, 49 (1999). As in that case, we are similarly convinced that circuit court here reached the necessary conclusions to support termination, notwithstanding the specific language used in the order.

**ISSUED**: July 30, 2025


**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

5